

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Tom C. King
State Auditor and Efficiency Expert
Austin, Texas

Dear Sir:

Opinion No. O-1650
Re: Proper application of funds
of State Teachers' College
in purchase of land when
part of consideration is
not mentioned in escrow
agreement or deed.

We have at hand your letter of November 7, 1939,
in which you request the opinion of this department as to
the authority for, and propriety of, certain expenditures
of one of the State Teachers' Colleges. That we may pres-
ent all of the facts involved as presented by you, we are
quoting your letter in full as follows:

"In connection with the current annual
audit of the accounts of one of the State
Teachers' Colleges of Texas, the following
facts relating to a real estate transaction
appeared:

"The owner of two city lots wrote the
local bank a letter on December 28, 1938,
to the effect that an accompanying deed
conveyed the lots to the State for the use
and benefit of the college, for a cash con-
sideration of $9,500; that the grantee was
paying $2,375, leaving an unpaid balance of
$7,125. The letter continued,

"'You will, please, hold this deed in
escrow, to be delivered only after this re-
maining consideration of $7,125 has been
paid to you for my account, together with
interest on this deferred balance at the
rate of 6% per annum from this date until

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

paid. My understanding is that the deferred balance will be paid in three equal annual installments of $2,375 each, due respectively, in one, two and three years from this date . . .'

"The president of the college, as the authorized representative of the Board of Regents, made this notation on the letter:

"'The terms of the foregoing escrow are accepted.'

"The letter is not acknowledged or recorded.

"The accompanying deed is in regular form, properly acknowledged, and, of course, unrecorded. It recites a cash consideration of $9,500. The records of the college, however, reflect the fact that the actual consideration was $15,000, and the balance of $5,500 was paid under a voucher immediately preceding that given for the $2,375 down payment.

"A laboratory building, now nearing completion, has been under construction on property of which this land forms a part. The building was financed at a cost of $110,675.48 under a contract with the Public Works Administration, which provides for payment of an accompanying bond issue out of revenues to be derived from the operation of the building.

"Your opinion on the following questions is respectfully requested:

"(1) Was it within the power of the Board of Regents to obligate the funds of the College for the payment of the purchase price of this land 'in three equal annual installments'?

"(2) As of August 31, 1939, what was the nature of the interest of the College in

this property?

"(3) As of August 31, 1939, what was the liability of the College, if any, with respect to future payments toward the purchase of the property?

"(4) Was the $5,500 payment a proper application of the College's funds, under the circumstances?

"For the purpose of this inquiry you may assume such facts, not detailed, as are necessary. I have related herein the substance of all the information I have. It will be helpful, however, if you will state the assumptions you make."

In a prior opinion by this department, No. O-1627, replying to your request of October 31, this writer discussed the problems involved in, and the law applicable to, your first three questions. You are respectfully referred to that opinion, a copy of which is attached, for answers to those questions.

In that opinion the conclusion was reached that it was not within the power of the Board of Regents to obligate the funds of the college beyond the appropriation term or period of two years. The cases of Charles Scribners' Sons v. Marrs, 114 Tex. 11, 262 S. W. 722 and Ft. Worth Cavalry Club v. Shepherd, 125 Tex. 339, 83 S. W. (2d) 660, were cited as authority.

That opinion also stated that the college at the end of the fiscal year, 1938-39, on August 31, 1939 had an equitable interest in the property to the extent of the amount of the purchase price paid. The equitable interest of the college in the instant case would include, in addition to the amount of the purchase price paid to the vendor, the value of that portion of the building placed on the land. See Mulholland v. Jolly (Civ. App., San Antonio, 1929) 17 S. W. (2d) 1109, writ of error refused.

The prior opinion also declared that the college was under no obligation to make further payments. In this connection, it may be well to add, however, that the full payment of the purchase price is a pre-requisite to the

Honorable Tom C. King, Page 4

vesting of legal title in the college.

These conclusions, all of which are supported by authorities in opinion No. 0-1627, constitute the opinion of this department as to your first three questions, and you are so advised.

The only material difference between the fact situation discussed in the cited opinion and that in the instant case is the fact of the payment of an additional consideration of $5,500 not mentioned in either escrow agreement or deed. The propriety of this payment forms the basis of your fourth question above quoted.

The exact meaning of your expression "a proper application of the college's funds," is not absolutely clear to us. We assume that you wish to know if the Board of Regents or its agent had the legal right to make this payment without mentioning it in either instrument. It is beyond the province of this department to answer a question of mere propriety or policy such matters resting within the sound discretion of the respective State agencies -- the Board of Regents in this instance.

Our courts have on numerous occasions declared that the State in its proprietary capacity has the same powers to contract as a corporation or an individual. 38 Tex. Jur. 836.

"In so far as mere property rights are concerned, we see no difference between the contract of a state and an individual and a contract between two individuals." Jumbo Cattle Co. v. Bacon, 79 Tex. 5, 14 S. W. 840. See also Charles Scribner's Sons v. Marrs, 114 Tex. 11, 262 S. W. 722.

It is elementary, of course, that the full consideration need not be recited in a deed between individuals. See 14. Tex. Jr. 818, sec. 53, and cases cited.

We know of no constitutional provision, statute, or other rule of law, which declares a different requirement when the State is a party to the transaction.

You state that the $5,500 payment is part of the consideration for the purchase of the land. This being so,

the fact that it was not mentioned in either of the instruments has, in the opinion of this department, no bearing on the legality of the transaction.

As we stated before, it is not our province to delve into the reasons why the Board of Regents or its agent saw fit to make no mention of this portion of the consideration so long as all legal requirements were met.

Your attention is called to the fact that this opinion and Opinion No. O-1627 are limited in their scope to an executory contract. These opinions should not be construed as holding that the Board of Regents is without authority to purchase land necessary to the conduct of the respective State Teachers' colleges under a purchase contract performable in two years; that is, within the period or term of the appropriation made for such purchase.

Trusting that the foregoing discussion fully answers your inquiry, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By Robert E. Kepke
Assistant

By Peter Maniscalco

PM:LM

APPROVED FEB 14 1940

ATTORNEY GENERAL OF TEXAS